UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CARDINAL SQUARE, LLC., | Case No.: 3:18-cv-00423-CHB |
| PLAINTIFF | ELECTRONICALLY FILED |
| v. | |
| ENVELOP GROUP, LLC, ET AL., | |
| DEFENDANTS. | |

**SECOND AMENDED COMPLAINT**
**(AMENDMENTS IN BOLD)**

Plaintiff Cardinal Square, LLC (hereinafter "Plaintiff" or "Cardinal Square"), states as follows for its Complaint against Defendants Envelop Group, LLC (hereinafter "Envelop Group"), Validated Custom Solutions, LLC (hereinafter "VCS"), Open Control Systems (hereinafter "OCS"), and LG Electronics U.S.A., Inc. (hereinafter "LG"), (collectively "Defendants"):

**STATEMENT OF JURISDICTION**

1. Plaintiff Cardinal Square, LLC is an Indiana limited liability company with its principal place of business located at 666 E Main St. C-1, Centerville, MI 49032.

2. Envelop Group is an Indiana limited liability company with its principal place of business located at 905 North Capitol Avenue, Indianapolis, IN, 46204.  Upon information and belief Envelop Group LLC owns and controls defendants Validated Custom Solutions, LLC and Open Control Systems, LLC.

3. VCS is an Indiana limited liability company with its principal place of business located at 905 N. Capitol Ave., STE 200, Indianapolis, IN, 46204.

4. OCS is an Indiana limited liability company with its principal place of business located at 905 N. Capitol Ave., STE 200, Indianapolis, IN, 46204. Upon information and belief OCS is owned and controlled by defendant Envelop Group, LLC. Upon information and belief OCS is, an agent, and acted as an agent of VCS at all relevant times herein.

5. LG is a Delaware corporation with its principal place of business located in Englewood Cliffs, NJ.

6. Plaintiff is the owner of two student housing apartment buildings called the Village Promenade (hereinafter "Village Promenade") located in at 1623 West University Avenue, Muncie, IN 47303 and serves primarily as housing for college students at Ball State University. In or around April 2013, Plaintiff entered into a contract with VCS for the purchase of LG Variable Refrigerant Flow HVAC systems and related equipment (hereinafter the "HVAC Units") for use in the Village Promenade. The contract, amongst other requirements, required that the HVAC Units installed in the buildings function properly.

7. The HVAC Units did not meet the agreed specifications and since 2014, the HVAC Units have experienced premature failures, including but not limited to failures of thermistors, sensors, and boards as well as continued leaking of coolant and excess condensation from the defective commissioning, checking, testing and maintenance of the units. Despite Plaintiff's best efforts to inform Defendants of these issues and provide them opportunities to correct their failures, the HVAC Units have not worked properly and have caused significant damages to Plaintiff.

8. This Court has subject matter jurisdiction over this action as Plaintiff's damages exceed the required jurisdictional minimum.

9. Jurisdiction and venue are proper as VCS and Plaintiff expressly agreed in the contract subject to this lawsuit that all disputes arising out of the contract shall be submitted to a court of competent jurisdiction in Jefferson County, Kentucky.

### FACTS RELEVANT TO ALL CAUSES OF ACTION

10. On November 18, 2013, Plaintiff, by and through its manager, Larry Gough, executed a general construction contract with Whittenberg Construction Company. The work to be performed under the contract was the construction of two student housing apartment buildings in Muncie, Indiana (the Village Promenade) owned by Plaintiff.

11. In September 2013, Plaintiff engaged VCS in conversations to discuss the installation, commissioning and maintenance of HVAC units for the Village Promenade.

12. In or around September 2013, VCS, by and through its agent Dan Fillenwarth, represented to Plaintiff as inducement to enter into a contract that the HVAC Units would be equivalent to, and perform better than, specified Daiken brand HVAC units which Plaintiff owned and used in other residential properties owned by Plaintiff.

13. LG, by and through its agent Dan Hansen, also made representations to Plaintiff that the HVAC Units would be equivalent to, and perform better than, specified Daiken brand HVAC units which Plaintiff owned and used in other residential properties owned by Plaintiff.

14. VCS had knowledge of the specified Daiken brand HVAC units owned by Plaintiff and of their performance.

15. In fact, VCS knew that the HVAC Units were not equivalent to the Daiken brand HVAC units owned and utilized by Plaintiff in Plaintiff's other residential properties.

16. VCS also represented to Plaintiff that the HVAC Units would perform better and require less maintenance costs than specified Daiken brand HVAC units which Plaintiff owned and used in other residential properties owned by Plaintiff.

3

17. VCS has knowledge, experience and expertise in installing, commissioning, and maintenance of HVAC units and the use of same to third parties.

18. Cardinal Square has experience in development of residential student housing, but has no expertise in installation, commissioning and maintenance of HVAC units.

19. Based on VCS's knowledge, experience and expertise in installing, commissioning and maintaining HVAC systems, Plaintiff chose to contract with VCS for that purpose.

20. On November 6, 2013, based on the representations made by VCS, Cardinal Square, LLC, by and through its manager, Larry Gough, executed a Purchase Order with VCS (the "Purchase Order") by and through VCS owner, **member and agent** Dan Fillenwarth, for the purchase, commissioning, checking, testing, start-up and maintenance of the HVAC Units for the Village Promenade (attached as *Exhibit A*). **Dan Fillenwarth is also the co-founder, along with Mike Martin, and a member and agent of Envelop Group.  Travis Ihnen served as President, member and agent of Envelop Group at all relevant times herein. At all relevant times herein Envelop Group acted as the apparent and/or actual agent of VCS and OCS.**

21. The Purchase Order provided, among other things, that Cardinal Square, LLC was to pay a total of $1,281,860.00 to VCS for purchase, commissioning, checking, testing, start-up and maintenance of the HVAC Units for the two buildings at the Village Promenade.

22. The Purchase Order described the items to be delivered as follows:

> All LG VRV HVAC equipment for Buildings #1 & #2.  All equipment is to be an equal to the specified Daikin units and as approved by the mechanical engineer. Supplier is responsible to provide piping layouts to the HVAC subcontractors.

23. The Purchase Order provided, among other things, that VSC was responsible for the, commissioning, checking, testing, start-up and maintenance of the HVAC Units at the Village Promenade.

4

24. The Village Promenade is composed of two buildings ("Village Promenade Bldg. 1" and Village Promenade Bldg. 2").

25. VCS, and its agents, were responsible for the testing, startup and commissioning of the HVAC Units at Village Promenade.

26. The LG equipment purchased and commissioned at the Village Promenade pursuant to the Purchase Order included 20 condensing units and 218 fan coil units in Village Promenade Bldg. 1 and 16 condensing units and 166 fan coil units in Village Promenade Bldg. 2.

27. The city of Muncie, IN issued a certificate of occupancy on August 14, 2014 for the Village Promenade.

**THE HVAC UNITS AT CARDINAL SQUARE FAIL TO WORK PROPERLY**

28. VCS or its agents started to bring the HVAC Unit systems on line as the Village Promenade buildings were completed.

29. During much of the period that VCS (and its agents, including but not limited to OCS), provided servicing, maintaining, supporting and repairing the HVAC Units, the HVAC Units failed to work properly, including but not limited to failures of thermistors, sensors, and boards as well as continued leaking of coolant and excess condensation from the defective start-up, commissioning and maintenance of the HVAC Units.

30. Upon information and belief, and only recently discovered by Plaintiff, the HVAC Units were not commissioned by VCS to generally accepted industry standards and best practices for HVAC commissioning.

31. Upon information and belief, and only recently discovered by Plaintiff, the HVAC Units were not serviced by VCS or its agents, including but not limited to OCS, to manufacturer and engineering specifications.

32. VCS continually represented to Cardinal Square that the HVAC Units installed at Village Promenade were equivalent to specified Daikin units as required by the Purchase Order.

33. Pursuant to the Purchase Order, VCS was responsible for commissioning and testing the HVAC Units to ensure proper functioning.

34. Pursuant to the Purchase Order, VCS was responsible for approving that the installation of the HVAC Units was done properly and that the HVAC Units were ready for start-up.

35.  It was VCS's responsibility in commissioning the HVAC Units to approve there were no installation deficiencies, or other deficiencies, with respect to the HVAC Units.

36. By commissioning, checking and approving start-up of the HVAC Units installed at Village Promenade, VCS represented to Plaintiff that the HVAC Units were installed properly, were working properly and were fit for their intended use.

37. During the installation of the HVAC Units, VCS periodically came to the Village Promenade to inspect the installation and never notified Plaintiff of any installation deficiencies.

38. VCS commissioned and tested the HVAC Units prior to initial start-up and never notified Plaintiff of any deficiencies with any of the subcontractors performing the installation.

39. The HVAC Units installed at Village Promenade were not equivalent to the specified Daikin units as required by the Purchase Order.

40. The HVAC Units do not perform their essential function of heating and/or cooling rendering them useless or of significantly diminished value long before the end of their reasonably expected useful life. The defects also present risks to the safety of consumers due to the inability to control the temperature in the rooms and/or buildings where they were installed. The defects have also damaged the Plaintiffs' buildings. The defects, including refrigerant leaks, among others, present numerous known and unknown hazards.

41. After the HVAC Units were commissioned and being maintained and serviced by VCS, VCS continued to represent to Cardinal Square that the malfunctions occurring to the HVAC Units were part of normal wear and tear and that the HVAC Units were equal to specified Daikin units as required by the Purchase Order.

42. According to the Purchase Order, VCS provided a warranty for the HVAC Units "against all deficiencies and defects in materials and/or workmanship."

43. The warranties provided by VCS in the Purchase Order were "for a period of one (1) year from the date(s) of substantial completion" and further provides that "[r]epair or replacement of materials after substantial completion/acceptance renews and restarts the warranty period for those repaired/replaced items."

44. The Purchase Order did not contain any waiver of implied warranties.

45. At various points in time between the initial installation of the HVAC Units until recently, VCS, by and through various agents, provided service to the HVAC Units at Village Promenade as required by the warranties. **At various times during the period that VCS and its agents, including OCS, provided servicing, maintenance, and repair of the HVAC Units, Dan Fillenwarth represented to Plaintiff that Envelop Group was the parent company of VCS and OCS.  At various times between the initial commissioning of the HVAC Units until early 2018, Dan Fillenwarth represented to Plaintiff that Envelop Group owned, controlled, and was responsible for the actions of VCS and OCS.  During this time, Dan Fillenwarth also represented to Plaintiff that Plaintiff needed to work directly with Envelop Group with regard to the various deficiencies to the HVAC Units and that Envelop Group's involvement was necessary in order to resolve the various deficiencies to the HVAC Units caused by OCS and VCS. Additionally, at various times between the initial commissioning of the HVAC**

7

**Units until early 2018, Travis Ihnen represented to Plaintiff that Envelop Group owned, controlled, and was responsible for the actions of VCS and OCS. During this time, Travis Ihnen also represented to Plaintiff that Plaintiff needed to work directly with Envelop Group with regard to the various deficiencies to the HVAC Units and that Envelop Group's involvement was necessary in order to resolve the various deficiencies to the HVAC Units caused by OCS and VCS. During a collective conversation with Dan Fillenwarth, Travis Ihnen and Mike Martin, it was represented to Plaintiff that Envelop Group was assuming all service warranty responsibilities of VCS and that OCS was the exclusive representative to manage equipment warranties for the HVAC Units. During this time Mike Martin also represented to Plaintiff that he was the owner and agent of Envelop Group, VCS and OCS. Each of the aforementioned representations were made in order to induce Plaintiff to contract with Envelop Group, OCS and/or VCS, and/or to delay provision of warranties made to Plaintiff, and/or to induce Plaintiff to continue to do business with Envelop Group, OCS and/or VCS. Plaintiff only recently discovered that Envelop Group now claims it does not own or control VCS or OCS.**

46. On several occasions, including on or about August 17, 2017, VCS performed a full recommissioning and attempted repair of the HVAC Units.

47. After the HVAC Units started to malfunction, VCS, by and through its agent Dan Fillenwarth, continually represented to Plaintiff that VCS would honor and extend the warranties provided to Plaintiff presumably for the purpose of delaying any legal action by Plaintiff against VCS. In fact, VCS did not honor or extend warranties in conformance with its representations.

8

48. VCS's words, actions, misstatements and omissions relating to this dispute constitute breach of contract, breach of warranties, misrepresentation, fraud, and negligence, among other causes of action known, and to be discovered.

### COUNT 1: BREACH OF CONTRACT

49. Plaintiff incorporates by reference the allegations in paragraphs 1 through 48 as if fully set forth herein.

50. Plaintiff contracted with VCS for the purchase, start-up, checking, commissioning, maintenance and servicing of the HVAC Units.

51. The Purchase Order contained, among other things, express warranties whereby VCS was to provide certain warranties for its materials against all deficiencies and defects.

52. The HVAC Units were not equivalent to the specified Daiken brand HVAC units as required in the Purchase Order.

53. The HVAC Units have not functioned properly, have failed prematurely and have caused damages to the Plaintiff.

54. In connection with VCS's acts and/or omissions relating to this action, including, but not limited to, the actionable conduct set forth above, VCS is in breach of the Purchase Order, which includes, but is not limited to, breach of express and implied warranties.

55. Plaintiff has performed all contractual conditions required of it.

56. Plaintiff has suffered and will continue to suffer damages as a result of the acts described above, and is therefore entitled to compensatory, consequential, and incidental damages from VCS, as well as attorneys' fees, costs, expenses, and all other relief as may be appropriate.

### COUNT 2: BREACH OF IMPLIED WARRANTIES

57. Plaintiff incorporates by reference the allegations in paragraphs 1 through 56 as if fully set forth herein.

58. At all relevant times, LG was and is in the business of selling, commissioning and servicing HVAC units.

59. Plaintiff bought the HVAC Units which were manufactured, marketed to them, warranted, and intended to be purchased by buyers such as Plaintiff, by LG, and are in privity with LG through its purchase of the HVAC Units.

60. Plaintiff had sufficient direct dealings with LG or its agents to establish privity of contract between Plaintiff and LG.

61. Further, Plaintiff is an intended third-party beneficiary of contracts between LG and VCS; specifically, Plaintiff is the intended beneficiary of LG's express and implied warranties. VCS was not intended to be the ultimate buyers of the HVAC Units; the warranties were designed for and intended to benefit the ultimate buyers such as Plaintiff only. Moreover, privity is not required where a manufacturer makes representations directly to the intended buyer, as LG did here.

62. At all times relevant herein, LG impliedly warranted in a uniform manner to Plaintiff that the HVAC Units were of the same or greater quality as generally accepted for HVAC Units and were safe and fit for their intended use as air conditioners.

63. Contrary to LG's implied warranties, the HVAC Units were not of merchantable quality at the time of sale, as they were not fit for the ordinary purposes for which such units are used and/or do not conform to the promises or affirmations of fact made to Plaintiff. The HVAC Units contained inherent, latent defects at the time of sale that were substantially certain to result in malfunction during the useful life of the product such that the HVAC Units would not perform their essential functions.

## COUNT 3: MISREPRESENTATION

64. Plaintiff incorporates by reference the allegations in paragraphs 1 through 63 as if fully set forth herein.

65. By the words and actions set forth herein, VCS, **OCS, and Envelop Group** made material representations to Plaintiff which were false and/or intentionally misleading.

66. VSC, **OCS, and Envelop Group** made these false, material representations to Plaintiff knowing them to be false, or made such false, material representations recklessly.

67. VSC , **OCS, and Envelop Group** made these false, material representations to induce Plaintiff to act, or refrain from acting, including but not limited to entering into contracts, agreeing to purchase additional services and products to service the HVAC Units and agreeing not to terminate the business relationship when the HVAC Units were failing.

68. Plaintiff relied on these false, material representations when acting, or refraining from acting, as the case may be.

69. Plaintiff has suffered and will continue to suffer damages as a result of the acts describe above, and is therefore entitled to compensatory, consequential, and punitive damages from VCS, **OCS, and Envelop Group** as well as attorneys' fees, costs, expenses, and all other relief as may be appropriate.

## COUNT 4: FRAUDULENT CONCEALMENT

70. Plaintiff incorporates by reference the allegations in paragraphs 1 through 69 as if fully set forth herein.

71. In connection with the acts, omissions and transactions set forth above, VCS **OCS, and Envelop Group** intentionally and/or recklessly concealed material information from Plaintiff.

11

72. VCS **OCS, and Envelop Group** intentionally and/or recklessly concealed material information from Plaintiff intending that Plaintiff act, or refrain from acting, in ignorance of the material information that VCS **OCS, and Envelop Group** was concealing.

73. Plaintiff has suffered and will continue to suffer damages as a result of the acts described above, and is therefore entitled to compensatory, consequential, and punitive damages from VCS, **OCS, and Envelop Group** as well as attorneys' fees, costs, expenses, and all other relief as may be appropriate.

## COUNT 5: FRAUDULENT INDUCEMENT

74. Plaintiff incorporates by reference the allegations in paragraphs 1 through 73 as if fully set forth herein.

75. VCS **OCS, and Envelop Group** made false, material misrepresentations to Plaintiff knowing them to be false, or made them recklessly without regard to the truth or falsity of the misrepresentations. VCS **OCS, and Envelop Group** also failed to disclose material information to Plaintiff.

76. VCS, **OCS, and Envelop Group** made false, material misrepresentations and omissions intending that they be acted upon by Plaintiff, and to secure Plaintiff's agreement to contracts and services to be provided to Plaintiff.

77. Plaintiff acted upon, or refrained from acting upon, VCS's **OCS's, and Envelop Group's** false, material misrepresentations and omissions to Plaintiff's detriment.

78. Plaintiff has suffered and will continue to suffer damages as a result of the acts describe above, and is therefore entitled to compensatory, consequential, and punitive damages from VCS, **OCS, and Envelop Group** as well as attorneys' fees, costs, expenses, and all other relief as may be appropriate.

### COUNT 6: NEGLIGENCE

79. Plaintiff incorporates by reference the allegations in paragraphs 1 through 78 as if fully set forth herein.

80. At all relevant times, VCS owed a duty to exercise reasonable care towards Plaintiff.

81. At all relevant times, VCS owed a duty to exercise reasonable care in the startup, checking, commissioning, inspection, servicing and maintenance of the HVAC Units.

82. In connection with the start-up, checking, commissioning and servicing of the HVAC Units, VCS had a duty to comply with all applicable standards of care, statutes, rules, regulations, specifications and policies in their design, installation, inspection, and maintenance of the HVAC Units.

83. VCS breached its duties by failing to properly check, startup, commission, and service the HVAC Units for Plaintiff.

84. As a direct, proximate and foreseeable result of VCS's misconduct, Plaintiff suffered harm, including but not limited to: loss of rent, damage to property other than the HVAC Units, damage to Cardinal Square's reputation and cost to repair the HVAC Units and other attendant structures.

### COUNT 7: PRODUCTS LIABILITY: STRICT LIABILITY

85. Plaintiff incorporates by reference the allegations in paragraphs 1 through 84 as if fully set forth herein.

86. LG is the designer, manufacturer and seller of the HVAC Units at Village Promenade.

87. LG was in the business of designing, manufacturing and selling HVAC units at the time the HVAC Units were installed at Village Promenade.

88. LG placed the HVAC Units into the stream of commerce.

89. The HVAC Units were defective and unreasonably dangerous at the time they were placed into the stream of commerce by LG.

90. Plaintiff is in the class of persons which LG should reasonably have foreseen would suffer damages from the defective nature of the HVAC Units.

91. The HVAC Units reached Plaintiff's location without substantial alteration.

92. The HVAC Units were unreasonably dangerous to Plaintiff's property.

93. LG failed to properly package or label the HVAC Units with reasonable warnings about its dangers and failed to give reasonable complete instructions about the proper use of the product.

94. Plaintiff has suffered damage due to the defective nature of the HVAC Units.

### COUNT 8: PRODUCTS LIABILITY: NEGLIGENCE

95. Plaintiff incorporates by reference the allegations in paragraphs 1 through 94 as if fully set forth herein.

96. LG failed to use reasonable care in designing the HVAC Units at issue, in manufacturing the HVAC Units at issue, in marketing and selling the HVAC Units at issue, in failing to warn Plaintiff about the danger of the HVAC Units when LG knew, or should have known, or should have discovered the danger and selling and putting the HVAC Units into the stream of commerce when they were in a defective condition unreasonable dangerous to users and/or consumers.

97. LG was negligent in its failure to use reasonable care by doing something a reasonably careful person would not do in a similar situation, and/or failing to do something a reasonably careful person would do in a similar situation.

98. As a direct and proximate result of the carelessness and negligence of LG in failing to design, manufacture, market, install and maintain the HVAC Units in a reasonably safe condition, Plaintiff suffered damages.

14

### COUNT 9: CLAIM OF MEMBER LIABILITY FOR OCS AND VCS'S DEBTS AND OBLIGATIONS AGAINST ENVELOP GROUP
### ("PIERCING THE CORPORATE VEIL" LIABILITY)

**99. Plaintiff incorporates by reference the allegations in paragraphs 1 through 98 as if fully set forth herein.**

**100.    VCS and OCS have used Envelop Group as an alter ego and a mere sham company designed to act as a sword to inflict fraudulent and unconscionable injury on the Plaintiff and now as a shield for VCS and OCS to attempt to avoid liability for this same conduct.**

**101.    Using Envelop Group as a sham company violates basic concepts of fairness and equity and therefore it is appropriate to pierce the company veil of limited liability to Envelop Group liable for the debts and obligations of VCS and OCS which is simply an "alter ego" of Envelop Group.**

**102.    Envelop Group used OCS and VCS and was used as fraudulent devices to inflict fraudulent injury on Plaintiff and now seek to use that business entities as a shield to avoid liability for their conduct.**

**103.    OCS and VCS have used Envelop Group as a mere instrumentality or alter ego.**

**104.    Envelop Group has exercised control over OCS and VCS in such a way as to defraud or to harm the Plaintiff.**

**105.    A refusal to disregard the limited liability company entity of VCS and OCS and hold Envelop Group directly liable for VCS and OCS's debts and obligations, including the claims brought in this action against OCS and VCS, would subject the Plaintiff to unjust loss.**

106. OCS and VCS is not only influenced by Envelop Group, but there is such unity of ownership and interest that the separateness between Envelop Group and OCS and VCS has ceased.

107. The facts are such that an adherence to the normal attributes, i.e., treatment of Envelop Group as a separate entity and separate company existence with limitation of liability for its members and subsidiaries OCS and VCS, would sanction a fraud or promote injustice.

108. Envelop Group disregarded corporate formalities with it made representations that it owned, controlled and was responsible for the actions of OCS and VCS as alleged above.

109. The limited liability company entity of Envelop Group must therefore be disregarded and Envelop Group must be held directly liable for OCs and VCS's debts, obligations and liabilities, including all such debts, obligations, and liabilities VCS and OCS owe to the Plaintiff.

110. Envelop Group should be estopped from avoiding liability because it assumed liabilities for OCS and VCS, as alleged above, and has waived any claim of corporate separateness from VCS and OCS.

WHEREFORE, Cardinal Square, LLC demands as follows:

1. All recoverable compensatory, actual, incidental, consequential, and all other damages prayed for herein, in an amount to be proven at trial and in excess of the jurisdictional minimum of this Court;

2. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law;

3. Trial by jury on all issues so triable;

4. For leave to file amended pleadings, as justice requires; and

5. All other appropriate relief in law or in equity to which it may now or hereafter be entitled.

Respectfully submitted,

GADDIS & MATTHEWS PLLC

/s/ Jonathan Matthews
JONATHAN H. MATTHEWS
10345 Linn Station Rd, Ste 300
Louisville, Kentucky 40223
jon@gaddismatthews.com
Phone: 502-805-2303
Fax: 502-805-2304
*Counsel for Plaintiff Cardinal Square, LLC*

## **CERTIFICATE OF SEVICE**

  This is to certify that on this 8th day of August, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System and the foregoing document was served electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in the case by electronic mail including:

MATT MCCUBBINS
Faegre Baker Daniels LLP
110 W. Berry St., Ste. 2400
Fort Wayne, Indiana 46802
Matt.McCubbins@FaegreBD.com
*Counsel for Defendants,*
*Envelop Group, LLC;*
*Validated Custom Solutions, LLC;*
*and Open Control Systems, LLC*


GENE F. ZIPPERLE, JR.
Ward Hocker & Thornton, PLLC
Hurstborne Place, Suite 700
9300 Shelbyville Road
Louisville, Kentucky 40222
GZipperle@whtlaw.com
*Counsel for Defendant,*
*LG Electronics U.S.A., Inc.*


              /s/ Jonathan Matthews
              *Counsel for Plaintiff*